Good morning. Our first case of the morning is case number 119181, Jeffrey W. Vaughn v. The City of Carbondale. Are you ready to proceed? I am, Your Honor. Ready? May it please the Court? Yes, Your Honor. I am Mike Kimmel. I am the City Attorney for the City of Carbondale. And we are here this morning to argue another case about the Illinois Public Service Employees Benefit Act. One that you are very familiar with. This Court has had this act in front of it many, many times and there have been several opinions. It is a unique act in that it requires municipalities to provide a very special benefit, lifetime health insurance, for a first responder and his or her spouse for their lives in certain circumstances. This is something that I think everybody agrees is appropriate in certain circumstances, but the legislature did not intend that this was a way to provide an extra benefit to firemen and police in all cases. The act is very narrowly drawn. It requires, basically, that there be a catastrophic injury, which this Court has defined and redefined again very recently in the village of Vernon Hills. So that's not an issue. This case, Mr. Vaughn was injured and was on a disability. He was off and on, but for purposes of this argument, he was clearly on a disability. Mr. Kimmel, before this Court can actually decide whether to make a decision in the case, it must be determined whether Vaughn actually is receiving a line of duty pension from Carbondale at this time. He currently is, yes. Okay. And if he is, was there a new hearing held? And did the Board determine Vaughn is able to return to work as a police officer? Well, there are currently hearings in progress. There was a hearing. He was injured in 2005. In 2012, the Pension Board required he take a physical. That indicated that he was able to return. There was a hearing, but inadequate notice was sent. Okay. Was notice sent on this hearing, this new hearing? Well, this one is pending. There has not been a finding by the Pension Board that he is not able to, or that he would be able to return to work, and therefore his pension would stop, and he is receiving full pension benefits today. Okay. Well, what is he reasonably believed to be an emergency? Is that a moot point now? That's the issue that we're here for. So we don't know that. We don't know. Well, there are very simple stipulated facts in this case. They are that Mr. Vaughn was a patrolman. He was on duty by his car. He was at the mall, a mall parking lot in the morning, which was the end of his shift. He got out of the car to give directions to a person while he was out of the car. He did have a personal radio, but he had that turned off. While he was out of the car, he heard the dispatcher call him. He returned to the car. Because of its proximity, he said, leaned in to get the microphone and hit his head on the top of the car. That's the injury that we're talking about here. And we have maintained, the city of Carbondale has maintained throughout this, that that is not adequate. What the fifth district did here was, in my opinion, create a fifth grounds. The act under A requires catastrophic, but under B requires four specific grounds. One of four. Those four are if he is injured by a perpetrator. In other words, a criminal shoots him. A classic example happened last week, unfortunately, I think of Philadelphia. An officer sitting in a police car and he shot, I think, 16 times. That clearly would qualify. The second one is that he's in hot pursuit. He's chasing somebody and he injures himself. To try to catch that person to get him off the streets. The third is he's involved in an investigation. And that requires the officer to go to places that you and I probably don't want to go. And probably wouldn't like to go, but officers have to go because of the investigation. Those are all clear. None of those apply in this case. The fourth one is that it is an action where the officer reasonably believes that he is involved in an emergency. What the fifth district has said here is since dispatchers do occasionally call officers and inform them of an emergency and a requirement that they respond to an emergency, that until that officer knows that it is not an emergency, he has to respond, as the fifth district said, in a timely manner. That really just throws your decision in Gaffney out the window. It just does away with it. Because Gaffney clearly defined what an emergency is. And it said an emergency has to be something that is unforeseen, puts a person or property at risk, and requires an urgent response. What the fifth district has said is a dispatcher call is something that has, on occasion, alerted someone to an emergency. Therefore, there is the potential for that. Therefore, it's number one foreseen, but it could lead to an emergency. The second part of that is that it is not something that has to be urgently responded to. Because the fifth district said he's been trained and a timely response is what the fifth district has required. Timely is certainly, in my view, not the same thing as what this court has said is required from urgent. And the third requirement is that there be property or life at risk. And what the fifth district said was, well, since the officer doesn't know, that doesn't matter. And, in fact, Mr. Kiltsch. Help me out with the appellate court order in this case to know exactly where we're at. They recited the black letter law concerning permanent injunctions, but then they never again mentioned permanent injunctions or analyzed whether the plaintiff was entitled to a permanent injunction. And they held that the plaintiff had suffered, as best I can tell, had suffered a catastrophic injury and that the injury occurred as a result of one of the four, I know you can test this, one of the four enumerated circumstances in Section 10B. And the appellate court stated, quote, we conclude these facts establish that the plaintiff's injury was incurred as a result of his response to what he reasonably believed was an emergency, what you've just been talking about. Yes, sir. And then they reversed the judgment of the circuit court and remanded for further proceedings. And they provided no further direction to the circuit court. So I guess my question is, I don't know that it's going to matter in the context of what we're looking at and discussing today, but did the appellate court find that the plaintiff was entitled to a permanent injunction? That would be my reading of their determination, yes, your honor. They did not, however, remand for the entry of an order of permanent injunction, right? They just assumed that was going to be done, although they had no discussion of permanent injunctions? Your honor, I assume that's probably correct. Obviously, I felt that the order was clearly wrong and needed to be appealed, and that's one of the reasons I filed a petition to this court. Okay, so best as you can tell, it was for entry of an order, not for a remand for a hearing on the permanent injunction. Right. The permanent injunction, how the officer gets the benefit under the Public Service Employee Benefits Act is, there's two or three ways that have been allowed. The statute doesn't call for anything specific. What happened here was, basically, Mr. Vaughn was determined not to be permanently injured and able to return to work, and the city terminated all health insurance benefits. He appealed that administratively to the trial court, but he also filed the action as the plaintiff against the city of Carbondale to require us to provide insurance. That's the permanent injunction. The trial court actually granted a temporary injunction pending determination and required us to provide health insurance while the court considered this, and then ultimately said he is not entitled to health insurance, and they denied the permanent injunction or the order requiring us to pay for his health insurance for his life. And you have two alternative arguments. Number one, that health insurance does not need to be provided, and even if health insurance was required to be provided, if the plaintiff is able to return to work, you don't feel that the health insurance then could be cut at that point. Is that your alternative argument? If it is determined that he can return to work and done with adequate notice, so it is binding on Mr. Vaughn and the pension board, which is a different entity than the city, at that point we would maintain that he fails to meet the requirements as set out in Section A of the Act, which is the catastrophic injury. And you have defined, the Supreme Court has defined, catastrophic injury as a permanent injury for which a line of duty pension is authorized. If he is not, I would submit that we can terminate it. But that's actually not before this court, because by the time it got to the appellate court, in this case, he had already also appealed the determination that he was not injured or that he could physically return to work. And the Fifth District said he was not adequately given notice of the hearing to end the pension, and therefore the pension is, in fact, still in effect. And as was asked, it is still being paid today. It's being litigated, and again, he's going before doctors, and there will be another hearing by the pension board, and the city has nothing to do with that. So on that second argument, there would have to be a finding that he was no longer entitled to a line of duty disability pension. That's correct. We would maintain that he is not entitled to insurance. And that's being litigated in a separate action. That's correct. So the only thing we're hearing is to whether he was ever entitled to health insurance from your perspective. That's correct, Your Honor. And we maintain that he never was, and we maintain that if we allow the Fifth District opinion to stand, it basically says that the legislature, although they only allowed four criteria for this, really meant to have five, or there is a fifth. And that's our problem with this determination. It doesn't accept any of your requirements for what an emergency is. It doesn't accept any of your requirements for that there be property or life at risk, and it doesn't require any problem with what is foreseen. It is not an emergency. The fact that the dispatcher could have been calling and said there's a fire or there's a robbery in progress and you need to proceed, he didn't know that. In fact, it didn't occur, but it was not an emergency call, but the Fifth District said it doesn't matter. They have created a new grounds, and that is a grounds that the State of Illinois should not be required to live with. This is a very expensive issue. I mean, we all know that the price of health insurance has skyrocketed in the last few years. When we're talking about lifetime insurance for both an officer and their spouse, that's a sizable amount of money. And we believe it should be allowed if there is truly a catastrophic injury and if there truly was a situation where that officer should have been out there putting his or her life at risk because of their duty. But if you hit your head on the top of the car, which we all may have done at one time, that's not what we're talking about. Now, if somebody was shooting at him and he was ducking not to be shot, we wouldn't be here. I would not argue that. I would accept that that's an emergency, somebody shooting at an officer. But when all he is doing is responding to a call, dispatcher says, Mr. Don, we want to talk to you. He is picking up the mic to respond. That's all that happens. That is not an emergency. And if we allow that, we've just, as I said, eliminated the requirement for emergency from this act. And then any officer who assumed a two-floor police station and the sergeant's on the ground floor, the officer's on the second. Somebody says the sergeant wants to see you downstairs. He's walking down the steps and he trips and he falls and he's permanently injured. Under the Fifth District's determination, the city would then have to pay he and his spouse or she and her spouse lifetime health insurance. And that's not what this act is all about. And that's not what the legislature said. It's not the clear language of this statute. And it cannot stand. The Fifth District opinion could not, should not stand. Now, there are two other kind of issues here that were briefed. I don't think there, one is, if there is benefit or insurance under this ever paid, Mr. Vaughn maintains that it can never be terminated because the statute says it can be terminated if it's fraud in the inception, effectively. We maintain it can be terminated for a lot of reasons. And here, clearly, if the court determines, and the court is the only one who can determine if there was a foreseeable emergency, the city can't determine that. You've said that clearly in Gaffney. If the court says there isn't, then it can terminate the benefits. I don't think the fact that the statute doesn't say, we are going to list every way you can terminate something. And the second one is that the city may be a stop because we paid benefits at one time. Well, that's clearly not the law in Illinois. Clearly, it is very difficult to a stop a municipality. We are a government entity and the courts have held often that we cannot be basically a stop except for actually a legislative act, arguably. But clearly here, the fact that we have paid some benefits in the past does not preclude this court from terminating and it does not preclude us from continuing to ask that they be terminated and if the court determines that we are correct, that there was no emergency here. Nothing covered by this statute that those benefits end and we are not required to pay any further benefits. Mr. Kimmel, perhaps Mr. Maurizio can answer the same question. Is it your understanding that the plaintiff is arguing that even if he did not qualify for benefits under 10B, this estoppel argument would still apply? Your Honor, as I read his argument, that is, that argument may be, he may not want to push it that far because it is illogical, but I understand that to be his argument. Yes, Your Honor. Well, we will let him tell us if that is his argument, but I wondered if that was your understanding. And obviously, Your Honor, if he is willing to concede the estoppel issue, I am willing to accept that concession. If there are no other questions, that is what I had to say. Thank you. May it please the Court. My name is Mike Maurizio. I represent Jeffrey Vaughn. I have since the day he was injured. I am very familiar with this case and all the appeals that it has gone through. Just to help the Court a little bit maybe, he was injured June 27th, 28th, 2005. He was denied his disability pension on March 24th, 2009. It was sent to the Circuit Court. Judge Grace, who reversed the Board on June 27th, the Board appealed and the Fifth District affirmed the Circuit Court and gave Jeffrey Vaughn a disability pension, which by definition becomes catastrophic because it was a disability pension in the line of duty. Shortly after that, and in July of 2012, the Board, the Pension Board, held another hearing. They had Mr. Vaughn re-evaluated, gave him no notice of why they were having him re-evaluated, gave him no notice that they were ever going to have a hearing on this re-evaluation, and the benefits were terminated on July 26th of 2012 by the Board, saying that he was now capable of going back to work. Well, we appealed that decision to the Circuit Court, who affirmed the Board at that time. Then we took it to the Appellate Court, and on March 14th, 2014, they reversed the Circuit Court and the Board for the failure to provide Mr. Vaughn due process in terminating his pension benefits. The Pension Board went all the way back to 2012 and paid him all the way through. Now, in the interim, and just so you know that now, the Board has again demanded Mr. Vaughn submit to medical exams. There have been several medical examinations conducted. There's been depositions taken, and there is going to be another hearing on whether or not Mr. Vaughn is still disabled pursuant to the act regarding pensions. Can I just make it so I can understand this over here? Okay. This statute does not provide for temporary disability versus permanent disability. It just calls it a pension, right? It doesn't break it into two, temporary and permanent. In fact, it anticipates that the city, the municipality, can request re-evaluation. Is that all part of the statutory scheme? The statute for the Pension Board, this does not have anything to do with the City of Carbondale. This is the Carbondale Police Pension Board, which is a totally separate entity. They have a separate statute, and actually they're required by statute until the pensioner is 50 years old, if he's on a disability pension, to require that he take another physical exam and then have a hearing based on that examination. Well, in this particular case, when they gave Mr. Vaughn his physical, they had a hearing, but they didn't tell him about it. They just had a hearing, unbeknownst to him. He was given no opportunity to respond, and the board terminated his pension. And that was the earlier appeal, et cetera. But that process of giving a pension and then reviewing it in the future is all part of the statutory scheme. It is. That's correct. It is. At any rate, after Mr. Vaughn was provided his disability pension, I sent a letter to Mr. Kimmel on January 26th of 2012. And the reason I sent the letter was Mr. Vaughn came to me and said, they won't give me my health insurance. So I wrote a letter to the city, directed it to Mr. Kimmel, and basically I said, pursuant to the Public Employee Act, you owe him insurance under 10B, 10A and 10B. There was nothing else ever done, and he started getting his insurance very shortly after, maybe even in January 2012. That continued until July of 2012, when the pension board unilaterally, without any notice, terminated his disability pension. At that same time, Mr. Kimmel, the city of Carbondale, I don't know if it was Mr. Kimmel, but the city of Carbondale, terminated his health insurance. That's when we filed the petition for an injunction to stop the city from terminating his health insurance. The trial judge in that particular case entered a temporary injunction saying pending the outcome of the appeal on whether or not his disability should have been terminated. The trial court let that ride for several months, and then for some reason, unbeknownst probably to even Mr. Kimmel, and certainly to me, she decided that she was going to rule, and she did, and she ruled that the city could terminate those health benefits. That's when this particular appeal went to the 5th District. In the meantime, after we filed the appeal to the 5th District on this issue of the health insurance, the 5th District came back and said, due to a violation of Mr. Vaughn's due process rights, we're reinstating his pension benefits. They never reached the issue of whether or not he was injured or whether he could go back to work. They just said he had no due process. Therefore, you can't terminate him. You've got to give him due process. So they reinstated his pension benefits, and that's what we're in the process of doing now. Just my suspicion is we'll probably end up back in the appellate court, regardless of who prevails at the hearing of the board. I don't know that for sure. But this particular case has to do solely with whether or not the city owes Mr. Vaughn health care benefits pursuant to this act. One of the things that the court should know is that when the city provided his insurance, the health insurance, to Mr. Vaughn in January of 2012, there was absolutely no objection from the city. No contest. No questions asked. Nothing. They just started the pension, or started the health care benefits, based on the fact that he was catastrophically disabled, and that was determined by the board, by the Carbondale Police Pension Board. Is that fact enough, Counsel, to indicate that even if this court would find that he was never entitled to the benefits under 10B, that estoppel should prevail? Personally, Your Honor, I believe it does. And the reason that I believe it does is pretty much set forth in the brief that I submitted. But his benefits, his health care benefits, were provided pursuant to this Public Employee Benefits Act. Mr. Kimball said, oh, we never paid him pursuant to that act. And my question is, then what did they pay him under? What theory is there that he was paid health care benefits by the city if it wasn't under this act, particularly in light of the fact they weren't paying it until I made demand that they pay it under that act, and then they immediately started paying it. It is my position that unless there has been a fraud committed by Mr. Vaughn, and there's no allegation of that anywhere in any of the pleadings, he retains his health care benefits. The only reduction can't be terminated, but they can be reduced. And forgive me, but I'm horrible with case names, and I cannot remember the name of the case where this court ruled, or the Fifth District, I believe, ruled, that a pensioner's benefits could be reduced if he went on Medicare. And they ordered those pensions that his health insurance reduced because he went on Medicare, and that Medicare supplemented or replaced the health care insurance that the city had provided him. I want to say it was piled. Where's the detrimental reliance with respect to the estoppel argument? The detrimental reliance, Your Honor, is that Mr. Vaughn chose, because the city provided him health insurance through their health insurance carrier, he terminated his personal health insurance. And I think that that is a reliance to a detriment, to his detriment, on what the city did. Because when they terminated it, he had a period of time where he had no health care coverage. Under federal law, he's entitled to health care, right? I'm sorry, Your Honor? Under current federal law, he's entitled to health care. If you're talking about the health care or Obamacare, whatever you want to call it, I believe that that's true now. I don't know. I'm on a VA disability, so I don't mess with health insurance at all. So I don't have any reason to know what those particular issues are, but it is my understanding that he would be entitled to health insurance. But he's still going to have a period of time between when the city terminated him and when he's able to pick up his own insurance. If, let's say, the process moves forward in that other universe that's going on And it is determined by the pension board that he is no longer disabled. Are you saying that he has a right to continued health care benefits? I believe he does. Even if it's been determined physically he is no longer disabled? I believe he does. And can you explain that to me? I believe that there is nothing in the statute that says that it can be terminated. It says it can be reduced. But it does not say it can be terminated except if he commits a fraud. And he's committed no fraud. And again, this is this, I find it kind of unusual statute, that is not a temporary disability or permanent disability. It's just there's this sense of it's a pension that can be revoked if in fact there's a finding he's no longer disabled. So the pension itself could stop under the statute and he wouldn't be getting any kind of pay out of the pension. But you're saying even if that were to occur, that he still has a lifetime right to health care insurance even though for the rest of his life he's not disabled? I believe that's correct based on what the statute itself says. There's nothing in the statute that says it can be terminated. It says it can be reduced. But not terminated. And that's my position. Now, that might be ludicrous, but I think that that's up to the legislature to correct that, not for this court. You know, I've been of the opinion for a long time that common sense died. And I think that the law has a lot to do with that because of the manner in which this legislature writes their statutes and the way the courts interpret those statutes. Rightfully or wrongfully so, I think common sense says what you're saying is that he loses his pension, he's not permanently disabled anymore, he should lose these health care benefits. But that's not what the statute says. The statute only says that it can be reduced or it can be terminated if Mr. Vaughn has committed a fraud upon the city by making some fraudulent statement that I'm permanently disabled and I deserve health insurance. Excuse me. Back to your original argument about the emergency nature. Under your interpretation, could there ever be a situation in which the officer sustains injury responding to a dispatch call that wouldn't be covered? Absolutely. Absolutely. So does it make any difference what the nature of the dispatch call is or is it the fact that any time he gets a call, he reasonably should believe it's an emergency? It depends, in my opinion, on what the circumstances are. I think all of these cases are very, very fact specific. I think if Officer Vaughn had been sitting in his squad car and he got the call and he picked the radio up and said something and found out that he was going to have to go talk to somebody about a dog barking loudly at the house, he put it back down and got out of his car to finish his conversation with the lady he was talking to, giving directions, then went back and hit his head on his car, I don't think this would apply at all because he already knew that it wasn't an emergency call. So is the appellate court's conclusion that the dispatch call is an emergency, is then it is a finding of fact or a finding of law? I'm sorry, Your Honor. I said is the appellate court's conclusion that the dispatch call is an emergency, a finding of law, or is it a finding of fact in this case? In this case, I don't think it matters. I don't think you even get to the issue as to whether the call Mr. Vaughn was responding to was or was not an emergency because he was injured before he knew. And his position is that when I get called by dispatch, particularly when they call me more than one time and I'm responding, something's going on. And as he was entering his squad car to find out what was going on, he hit his head and fractured some vertebrae in his back and that's what caused his disability. He did not know at the time whether the call was or was not an emergency at the time he was injured. He didn't know. But he was responding as if it was. But I thought you said the surrounding circumstances make a difference. I think they do. And the surrounding circumstances in this case is that Mr. Vaughn was out of his squad car. He gets a call from dispatch. They called him twice or three times. He thought that something was going on, so he ran to his squad car. When he entered to get to the radio, he hit his head and injured himself. After that, he got situated in the car, responded to the dispatcher, and found out what his call was. And I don't know what it was, but I know it wasn't an emergency. But he didn't know that. And I think what the Fifth District is saying is that until an officer knows whether he is responding to an emergency or a non-emergency, he should treat that call as if it were an emergency. And, you know, I can tell you I was a policeman for 11 years, and that's the way we responded to calls, and I was a policeman in Carbondale. You respond to calls as if it's an emergency until you know differently. It's just like any call then would qualify, right, unless an officer said the phone rang or the dispatch came and I just felt in my being that it was going to be a non-emergency. I mean, all the officer would have to say every single call, subjectively you're saying, any time there is a call, he treats it as an emergency. Whether it's to get a cat out of a tree or whether there's a burglary in the local liquor store. I think that's true. I think an officer should treat every call, and I think officers do treat every single radio call as if it were an emergency until they've answered. And, again, it's the circumstances. Let's go back to common sense again that you were indicating. When we look at the requirements of TIN, the officer's response to what is reasonably believed to be an emergency, why would that not just simply read the officer's response to any call? I don't know why. But I think a police officer initially responds to the radio as if it were an emergency. That's whether he's sitting in the squad car, reaches out, and gets the microphone, or whether he uses his personal handheld radio. And, by the way, I just want to address that issue. So we never really assessed the nature of the call. Like even you said, this was a non-emergency call. That's what it ended up being, but he did not know that at the time of his injury. Right. He was responding as if it were. You can proceed. Your Honor, again, these are all, in my opinion, very fact-specific, depending on where's the officer at and what's he doing at the time the call comes in. If he's in his car and he reaches out and picks the radio up and says, I'm here, what's up? And they say, go get the cat out of the tree. Okay. That's one thing. If he picks it up and they say there's an alarm at the liquor store and he takes off to go to the liquor store and when he gets there it's a false alarm, does that make a difference? I mean, you respond to these calls as if they are emergencies until you know differently. And historically that's been done. And generally it takes five seconds to know whether you've got an emergency or not. Once you get to that radio and talk to the dispatcher. What to the words the officer's response to what is reasonably believed to be an emergency? What are the words reasonably believe me? Is that an objective standard when you say he got a call and a cat was in a tree and we sit here in that simple and say he did not reasonably believe that to be an emergency. He could get there in a half hour. The cat would still be there. But under your analysis, why would reasonable belief even enter into it? I mean, you're saying that an officer in every situation with every call has reasonable belief that that's an emergency. So what do those words mean? He should have a reasonable belief that it's an emergency. If he's properly trained, that's the way he's going to respond to those radio calls until he knows differently. It would be like if the dispatcher called in my time. You may answer. If the dispatcher called and said, District 10, we've got a cat in a tree over at such and such an address. Go take care of it. Well, obviously, no matter what he does, he knows that's not an emergency before he ever touches that radio. So, I mean, again, I think these are all just very fact specific. Thank you. Thank you. Very briefly, the last thing you were discussing is the true crux of why I think this had to come to this court and why this court must overrule the 5th District. The 5th District has basically said that until the officer understands completely that it's not an emergency, it is an emergency, except if you look at their decision and you read their language, they say it doesn't matter until he knows. And that's not what the legislature said. As Justice Thomas said, the legislature could have written this thing and just said, every time an officer is injured, he should get this. And my community would have to live with that and would have to pay for that. But that's not appropriate. That's not what the legislature said. The legislature clearly said emergency, and the legislature understands that this court in Gaffney has defined emergency. And an emergency is clearly not what occurred here. If you accept what the 5th District accepted, they just throw emergency out. The three requirements that you've said are defining emergency in this statute. They violate each one of those, each one of the three. And if that's allowed to stand, then that's what we're going to have to deal with, which is a whole fifth grounds for this. Now, there was another issue, the causality, whether this is a catastrophic injury, the A section, that really is whether he is permanently disabled. It does get confusing, and I would clearly say that when he is determined or if he is determined and legally determined to be able to return to work, that we should be able to terminate health insurance. When you talked about this in the NOLA case and the Crowland case, that was the first case, and I'm not sure how it's pronounced, you looked at the legislative history. This statute is to cover exactly what I said. Sometimes our first responders are out there and we ask them to go in places where they put their own health and safety at risk, and they certainly put their families at jeopardy. And this is to try to protect that, just as that officer in Philadelphia who was shot 16 times. Society should benefit him and his family. We have no problem with that. But if a person slips on the steps, walking down the steps, should we then have to do this? And clearly now we are in a situation where under federal law, Mr. Vaughn can get health insurance. There's no question about that. He had no detriment except he didn't pay a premium, and he wanted a benefit for not having paid a premium. If you look at estoppel and detrimental reliance, you've got to have something I relied on. If the city says they're going to rezone it and I spend thousands of dollars buying a lot and buy a bunch of materials and then they say, oh, we didn't mean it, that's promissory estoppel. I relied to my detriment. Mr. Vaughn didn't rely on anything. He just kept getting benefit. And clearly estoppel should not stand against the city. There is no fraud in the inception. I would concede that. I would even say that if you look at this case, and I have briefed this under your decision in Dill, that Mr. Vaughn's affidavit constitutes an admission that he did not believe this was an emergency. And I think that one of the reasonable beliefs of an emergency is twofold. One, that the officer actually believed there was an emergency going on. If an officer is out there and a bunch of firecrackers go off and he thinks they're gunshots and he tries to dive under his car and injures himself, I wouldn't be here arguing that that's not an emergency. But in this case, Mr. Vaughn didn't think that. He thought, this isn't a call that I need to timely respond to. And he could have, had he thought it was a true emergency, he could have turned on the radio he had and responded with the radio on his vest. That was the quickest way to do it. That isn't what he chose to do, and we don't have any problem with that, except there was no emergency. There was no thought there was an emergency. There's an admission he didn't think there was an emergency. And clearly, we should not be required to pay for health insurance for he and his spouse for the rest of their lives. Thank you. Thank you. Case number 119181, Jeffrey W. Vaughn v. The City of Carbondale, will be taken under advisement as agenda number four. Mr. Kimmel and Mr. Maurizio, thank you for your arguments this morning. You are excused at this time.